NOT DESIGNATED FOR PUBLICATION

No. 123,241

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF
ALLEN JUSTIN POPLIN,
*Appellant/Cross-appellee*,

and

ELIZABETH LEIGH POPLIN (n/k/a WELTZ).
*Appellee/Cross-Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; NEIL B. FOTH, judge. Opinion filed August 20, 2021. Affirmed in part and reversed in part.

*Allen Justin Poplin*, appellant pro se.

*Thomas E. Hammond, II*, of Gates Shields Ferguson Swall Hammond, P.A., of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Allen Justin Poplin appeals from the district court's decision granting certain supplemental maintenance payments to his former wife, Elizabeth Leigh Poplin, n/k/a Weltz, based on the parties' property settlement agreement. Poplin argues that he did not have to make such payments after Weltz began cohabitating with her fiancé. Poplin further argues the district court erred in granting Weltz' motion to quash Poplin's discovery requests about the date she began cohabitating, and also granting Weltz' request for attorney fees for the litigation of his discovery motion. Finally, Poplin

1

argues that the district court should have awarded him attorney fees for the cost of defending against Weltz' cross-appeal. Weltz cross-appeals the district court's denial of her request for the attorney fees she incurred after being compelled to enforce the parties' settlement agreement, as well as the district court's failure to address her request for additional supplemental maintenance. Lastly, like Poplin, Weltz also filed a motion with this court under Supreme Court Rule 7.07(c) (2021 Kan. S. Ct. R. 51), seeking an award for the attorney fees incurred in litigating this appeal.

We affirm the district court's decisions on each issue raised by the parties, apart from the court's award of attorney fees to Weltz for litigating a motion to quash Poplin's discovery request. Because that award is not supported by substantial competent evidence the court's decision is reversed. We also find that neither party is entitled to attorney fees for the cost of litigating this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Allen Justin Poplin and Elizabeth Leigh Weltz divorced in July 2018, and the district court adopted the parties' property settlement agreement in its divorce decree. At the time of their divorce, Poplin was employed as an attorney at a large law firm. He received regular, semi-monthly payments on the fifteenth and final day of each month, as well as more cash distributions and retirement distributions at various points each year. Relevant to the issues on appeal, the parties' property settlement agreement provided:

- Poplin would pay Weltz base maintenance of $2,047 per month in equal installments of $1,023.50 on the first and sixteenth days of each month;
- Poplin would pay Weltz supplemental maintenance of 25 percent of the difference between all cash distributions and bonuses Poplin earned each year and any other income Weltz received beyond her annual income of $17,000;

2

- Poplin would also pay Weltz 28.25 percent of the difference between any retirement distributions he received and any income Weltz earned beyond her $17,000 annual salary not already counted for purposes of supplemental maintenance on cash distributions;

- Poplin had to pay supplemental maintenance within 45 days of receiving any cash or retirement distributions;

- Upon Poplin's request, Weltz had to provide Poplin her most recent paystub within 7 days; and

- Poplin's obligations to pay maintenance terminated upon Weltz cohabitating.

Weltz quit her job in January 2020 and had not taken a new job as of the district court's decision following the enforcement proceeding. In March 2020, Weltz informed Poplin she intended to move in with her fiancé, likely in late April or early May, but the date remained somewhat unsure because of ongoing construction at the property. In the latter part of May 2020, Weltz began cohabitating with her fiancé. The exact date she began doing so is a central point of dispute in this appeal. Weltz claimed she began cohabitating on May 26, 2020. Yet it was Poplin's contention that the two began living together at least as early as May 20, 2020, even possibly May 15, 2020, if not earlier. In its ruling, the district court found Weltz began cohabitating with her fiancé on May 20, 2020. The district court explicitly rejected Poplin's assertion cohabitation may have begun on or before May 15, 2020, finding he proffered no evidence to support such a contention. The district court stated the only thing in the record remotely supporting a date earlier than May 20, 2020, was Poplin's own assertion he "believe[d] that the cohabitation began at least as early as May 15, 2020." But, as the district court noted, this was simply a statement made in an attached exhibit to Poplin's response to Weltz' motion entitled "Declaration of Justin Poplin," which the district court correctly characterized as "essentially . . . an un-notarized affidavit."

3

There is no dispute that Poplin paid base maintenance through May 16, 2020. Weltz acknowledged Poplin's future maintenance obligations were extinguished as of the date she began cohabitating with her fiancé. Yet Poplin received a retirement distribution on April 14, 2020, and a cash distribution on April 15, 2020, yet opted not to pay Weltz supplemental maintenance on those distributions within 45 days of their receipt. On June 5, 2020, Weltz filed a motion to enforce the property settlement agreement, arguing she was entitled to $7,419.58 for Poplin's most recent retirement distribution and $7,297 for Poplin's most recent quarterly cash distribution.

Poplin responded, arguing he did not have to pay supplemental maintenance for the April 2020 distributions based on Weltz' cohabitation with her fiancé. Poplin asserted his obligation to pay did not arise under the property settlement agreement until 45 days after receipt of the distributions. Thus, it was his position that supplemental maintenance for any retirement or cash distributions he received in April 2020 was not owed to Weltz because she began cohabitating on May 20, 2020. Poplin asserted his obligations to pay supplemental maintenance did not arise until May 29 and 30, 2020, which marked the 45th day after they were received, respectively, and he had been absolved of those obligations by Weltz cohabitating with her fiancé.

In response to Weltz' pursuit of legal enforcement of the parties' settlement agreement, Poplin sought discovery related to Weltz' cohabitation with her fiancé, including interrogatories and requests for production of documents on:

- Whether Weltz ever shared or benefitted from any account with her fiancé, such as a bank account, zoo pass, credit card account, mortgage, utility, swimming pool pass, streaming service, gym membership, warehouse club membership, food delivery or transportation service, rewards account, or any other monthly subscription service;

4

- Any agreement Weltz had with her fiancé regarding the division of household tasks, including cooking, cleaning, and yard work;
- The number of meals Weltz prepared for her fiancé between January 1, 2020, and April 14, 2020;
- All holidays and relevant dates that Weltz spent at least a portion of with her fiancé since 2017; and
- All people Weltz visited at a particular address in Overland Park before May 26, 2020.

Poplin also requested discovery on the date and location of Weltz' engagement to her fiancé, as well as the specific dates for all nights she spent with her fiancé in 2020, and whether Weltz' or her fiancé's children were present on those dates. Poplin further made a request for admission asking whether Weltz and her fiancé had been in a sexual relationship since December 31, 2017, a date which preceded their divorce.

Weltz moved to quash Poplin's discovery requests, arguing they sought irrelevant and inappropriate information; were intended to harass Weltz and her fiancé; and were made without legitimate effort or basis to request relevant information. The district court granted Weltz' motion, finding Poplin made no colorable claim that cohabitation occurred before May 20, 2020. As a result, his requests were not proportionate to the pending litigation, and the contents and tone of his requests revealed his true motivation, which was to harass Weltz. The district court also granted Weltz attorney fees of $750 for preparing the motion to quash.

The district court also rejected Poplin's substantive argument, finding it differed from the plain language of the relevant portions of the property settlement agreement. The district court reasoned that Poplin's obligation to pay supplemental maintenance arose on the date he received the distributions. It held that the language "'[s]uch supplemental maintenance shall be paid within forty-five (45) days of [Poplin] receiving

5

the cash bonus/distribution,'" merely set forth a timeframe in which Poplin could request information on Weltz' income and have a qualified domestic relations order prepared, if necessary, before making the payments. The judge noted that Poplin did not object to the calculations of the amounts owed to Weltz for the April 14 and 15, 2020, distributions; his argument was simply limited to whether he owed anything under the terms of the property settlement agreement based on Weltz' subsequent cohabitation.

Weltz requested additional attorney fees related to the costs of her motion to enforce the property settlement agreement, which the district court denied. Weltz does not dispute Poplin paid the required base maintenance; she simply asserts the district court's determination of Poplin's supplemental maintenance obligations for the April 2020 distributions was proper. But Weltz also argued before the district court that Poplin owed additional supplemental maintenance because certain retirement and cash distributions Poplin would receive after the date she began cohabitating were earned prior to the cohabitation date. But the district court did not address Weltz' argument on this point.

Poplin timely appealed and Weltz timely cross-appealed.

ANALYSIS

DID THE DISTRICT COURT ERR IN DETERMINING POPLIN NEEDED TO PAY SUPPLEMENTAL MAINTENANCE FOR CASH AND RETIREMENT DISTRIBUTIONS HE RECEIVED PRIOR TO THE DATE WELTZ BEGAN COHABITATING WITH HER FIANCE?

*Standard Legal Principles*

The issues on appeal mainly arise from a dispute over the terms of the parties' separation and property settlement agreement. A separation agreement is subject to the normal rules of contract law so, when the issue on appeal involves its interpretation,

6

review is de novo. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939, 381 P.3d 490 (2016); see *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016) (appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015).

"'[A]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.' Citation omitted." *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

This overarching standard of review has some bearing on all issues presented in this appeal. While other issues in this appeal present more specific points of law, the relevant standards of review are set forth as necessary.

*Poplin's appeal*

> *The district court properly determined Poplin was obligated to pay*
> *supplemental maintenance for cash and retirement distributions he*
> *received prior to Weltz cohabitating.*

Poplin argues the district court erred in its interpretation of the relevant portions of the parties' property settlement agreement over supplemental maintenance. Poplin asserts he did not have to pay Weltz until the 45th day after receiving the distributions. Thus, it is his position that the district court erred in finding he needed to pay Weltz supplemental

7

maintenance for distributions he received in April 2020 because she began cohabitating less than 45 days after he received the distributions.

Contrary to Poplin's argument, the district court soundly concluded the plain language of the property settlement agreement imposed an obligation for Poplin to pay supplemental maintenance upon receipt of any distributions. The relevant portion of the agreement states: "supplemental maintenance shall be paid *within* forty-five (45) days of [Poplin] receiving the cash bonus/distribution." (Emphasis added.) Poplin unpersuasively asserts: "The forty-five days is not a grace period; it sets forth when the obligation to pay arises."

Poplin's argument is a woefully unavailing exercise in semantics that strays far from any reasonable interpretation of the words "shall be paid within forty-five (45) days of . . . receiving the . . . distribution[s]." Here, the district court properly focused on the importance of the words "within" and "receiving." As defined in Webster's New World College Dictionary 1663 (5th ed. 2014), "within" is a preposition used as "1 in the inner part of; inside [;] 2 not beyond in distance, time, degree, range . . . 3 inside the limits of." Simply put, "within forty-five (45) days" specifies the difference or margin between the time Poplin receives the distribution and when he must pay Weltz. But it does not mean Poplin's obligation to pay only *arises* on the 45th day *after* receiving payment; the obligation must be satisfied "*within* forty-five (45) days *of . . . receiving* the . . . distribution." (Emphases added.)

Here, the district court properly concluded that Poplin's obligation to pay Weltz arose when he received the distributions. The district court soundly and sensibly reconciled various provisions of the agreement, reasoning the 45-day period for Poplin to pay reflected the agreement's provisions allowing Poplin time to request Weltz' most recent paystub and seek a qualified domestic relations order before paying, if necessary. The law favors reasonable interpretations of contracts, and contract provisions should not

8

be construed in isolation. The district court's interpretation of the supplemental maintenance provision reflects these principles. In contrast, Poplin's interpretation tends to "vitiate the purpose of the terms of the agreement to an absurdity," and is, therefore, one this court cannot abide. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963. Nothing in the plain language of the maintenance termination clause supports a conclusion that already-existing obligations are extinguished upon cohabitation. It would be a baseless interpretation to conclude Poplin can avoid an obligation already due and owing simply by running out the clock. This court cannot, and will not, permit such a result. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

> *The district court properly granted Weltz' motion to quash Poplin's discovery requests but erred in awarding attorney fees related to her motion.*

Poplin argues the district court erred in granting Weltz' motion to quash his discovery requests because Weltz violated the requirements of K.S.A. 2020 Supp. 60-226(c). He contends that Weltz neglected to confer or attempt to confer with Poplin to resolve the issue(s) prior to filing her motion and the motion lacked the required certification as to the steps taken by all attorneys to attempt to resolve the issues in dispute. Poplin further argues the district court erred in finding that his discovery requests were inappropriate. Finally, Poplin argues the district court's award of attorney fees related to Weltz' discovery motion was improper.

A district court's ruling on discovery issues is reviewed for an abuse of discretion. *Miller v. Glacier Development Co.*, 284 Kan. 476, 498, 161 P.3d 730 (2007). Whether a district court can award attorney fees is a question of law subject to unlimited review. Once it has been determined such authority exists, the district court's decision is reviewed for an abuse of discretion. *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact.

*Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). To the extent that the parties' arguments require this court to interpret statutes, they present questions of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

     1.       *The district court did not err in granting Weltz' motion.*

Poplin is generally correct that Weltz did not try to confer with him prior to filing her motion. Still, his argument that this issue warrants reversal of the district court's ruling is unpersuasive.

In relevant part, K.S.A. 2020 Supp. 60-226(c) provides:

> "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action and must describe the steps taken by all attorneys or unrepresented parties to resolve the issues in dispute. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."

Poplin argues the district court abused its discretion based on an error of law because of Weltz' purported dereliction. But he offers no authority supporting his assertion that this issue mandates reversal of the district court's decision. The only authority he cites is the statute itself, which is effectively silent on whether the district court can still issue a protective order forbidding or limiting discovery absent such certification. When a litigant fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite lack of authority, or in the face of contrary authority, he waives or abandons the issue. *McCain Foods USA, Inc. v. Central Processors*, Inc., 275 Kan. 1, 15, 61 P.3d 68 (2002). All the same, Weltz did not seek a

protective order, she merely sought to quash the request, so no certification was required. See *In re Marriage of Smith*, No. 117,664, 2018 WL 1247164, at *2 (Kan. App. 2018) (unpublished opinion).

"The purpose of discovery is to eliminate the element of surprise from trials, simplify issues and procedures by full disclosure to all parties of anticipated evidence and factual and legal issues, and to consider such matters as may aid disposition of action." *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, 11-12, 815 P.2d 528 (1991). Thus, "statutes and rules governing discovery and pretrial procedures are to be broadly construed to accomplish their intended objectives." *Burkhart v. Philsco Products Co.*, 241 Kan. 562, 570, 738 P.2d 433 (1987). For this reason, "[t]he trial court is vested with broad discretion in supervising the course and scope of discovery." *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 768, 915 P.2d 86 (1996). Under K.S.A. 60-226(c), "a court can limit discovery pursuant to its general supervisory powers over discovery." *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 621, 244 P.3d 642 (2010). Our Supreme Court has recognized "the well-established principle that district courts have the authority, independent of a statutory privilege, to prevent or limit the power of compulsory process when necessary to prevent abuse, harassment, undue burden or expense," a principle consistent with the district court's statutory authority under K.S.A. 60-226(c). *State v. Gonzalez*, 290 Kan. 747, 767, 234 P.3d 1 (2010).

The overall substance of Weltz' motion reflects the grounds for relief afforded under K.S.A. 2020 Supp. 60-226(c)—preventing undue burden, expense, embarrassment, harassment, delay or inquiries into irrelevant issues. The district court was well within its broad discretion to "prevent or limit [discovery] . . . to prevent abuse, harassment, undue burden or expense." *Gonzalez*, 290 Kan. at 767.

Poplin alternatively argues that even if the deficiencies he alleges existed in Weltz' motion do not constitute reversible error, the district court was still incorrect in holding

11

that his discovery requests were irrelevant to the issues. He asserts the district court abused its discretion because its decision was (1) unreasonable, and (2) based on an error of fact. Poplin asserts no reasonable person would have denied his discovery requests because there was "a serious question as to when cohabitation began." But as the district court correctly noted, the record does not show Poplin ever questioned whether Weltz was cohabitating prior to the date she moved in with her fiancé. Although Poplin was notified in March 2020 of Weltz' intention to move in with her fiancé in April or May, Poplin never alleged she was cohabitating or questioned his obligation to make regular maintenance payments, which he made on April 1, April 16, and May 1, 2020. The record reveals Poplin's assertion there was "a serious question as to when cohabitation began," because he never appeared to question it until after Weltz filed her motion to enforce the property settlement agreement.

Poplin also asserts "there was constructive cohabitation since at least January [2020] when [Weltz] quit her job." But again, the record reflects Poplin was generally aware of the various facts and circumstances underlying his theory of constructive cohabitation well before Weltz filed her motion to enforce the property settlement agreement. Even though cohabitation would have extinguished Poplin's maintenance obligations, he took no action. Yet Poplin's theory of constructive cohabitation is flawed. In support of his argument, Poplin relies on *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 935-38, 381 P.3d 490 (2016). In that case, we discussed several factors relevant to whether cohabitation occurred, including: The existence of a romantic or sexual relationship; the division of household tasks; the intermingling of finances; and integrating the couple's children into a single family unit. Many of Poplin's discovery requests were generally in line with these considerations. But Poplin seemingly overlooks a key aspect of our holding in that case which is "it is the fact of *living with* another person as husband and wife . . . which triggers cohabitation." (Emphasis added.) 52 Kan. App. 2d at 937. Poplin does not allege Weltz and her fiancé were actually living together prior to May 2020. In fact, to the contrary, Poplin asserts in his brief that his children

12

were with him between May 15 and May 19, 2020, and it is likely Weltz moved in with her fiancé during that time. Poplin also emailed Weltz' attorney on May 26, 2020, stating: "[Weltz] and the kids have moved in with her fiancé." At that time, Poplin asked Weltz to agree to a proposed order terminating maintenance, providing, in relevant part: "[Poplin's] obligation for maintenance and supplemental maintenance has terminated on or before 5/26/2020."

The district court properly concluded Poplin had no right to discovery relating to his theory of constructive cohabitation because it was generally irrelevant to the issues and Poplin never voiced any concerns as to Weltz' cohabitation prior to the admitted date she began doing so. A party has no right to discover matters irrelevant to the issues in a case. See *Frontier Ditch Co. v. Chief Engineer of Div. of Water Resources*, 237 Kan. 857, 866, 704 P.2d 12 (1985).

As to Poplin's other assertion that he "believe[d]' that the cohabitation began at least as early as May 15, 2020," the district court correctly found Poplin offered no evidentiary support for his belief. Poplin claimed his children told him Weltz and the children were living with Weltz' fiancé at least as early as May 20, 2020. Yet Poplin argues the district court erred in finding his "children will apparently contradict him regarding a date of physical cohabitation before May 20" because his children were with him between May 15 and 19, 2020. His argument on this point is circuitous and unsound. Poplin asserted—and continues to assert—Weltz likely moved in with her fiancé while the children were with him. Even assuming his children had no basis to *contradict* his allegation, they would have no basis to *corroborate* his allegation because they were with him, not Weltz, during the relevant timeframe. At best, Poplin has shown slightly inartful wording in the district court's otherwise-sound conclusion. But contrary to Poplin's argument, the district court did not base its decision on an error of fact.

13

Poplin has no valid claim that the district court erred in denying his discovery requests. The district court made a factual finding that cohabitation began on May 20, 2020, and that finding has evidentiary support. It is not the role of this court to reweigh the evidence underlying the district court's determination. It can only find error if the district court's finding is not supported by substantial competent evidence. *In re Marriage of Knoll*, 52 Kan. App. 2d at 937. The district court's findings on the relevant facts and circumstances giving rise to any plausible claim of cohabitation are properly supported for the reasons previously discussed. That ruling is thus affirmed.

2.      *The district court erred in awarding Weltz attorney fees.*

Poplin advances the other claim that the district court lacked authority to award Weltz attorney fees, but if it had the authority to do so, it abused its discretion because there is no support for the amount awarded. The bulk of Poplin's argument is generally unpersuasive given that it focuses on whether the district court could award attorney fees. He asserts the district court could not do so because granting Weltz' motion was improper. But, as discussed above, the district court properly granted Weltz' motion to quash.

Poplin acknowledges an award might be allowed under K.S.A. 2020 Supp. 60-237(a)(5), but then contends that no such award is permitted unless the movant conferred or tried to confer in accordance with K.S.A. 2020 Supp. 60-226(c). His argument is misplaced because K.S.A. 2020 Supp. 60-237(a)(5)(i) refers to a movant who "attempt[s] . . . *to obtain* the disclosure or discovery." (Emphasis added.) Weltz was *opposing* Poplin's attempts to obtain discovery.

But whether attorney fees would be authorized by statute is essentially irrelevant. The district court can award attorney fees as authorized by statute *or* agreement. *Unruh*, 289 Kan. at 1200. Poplin incorrectly asserts "[t]here is no applicable agreement" for

14

attorney fees. This assertion turns a blind eye to the property settlement agreement he entered into with Weltz which clearly states, in relevant part: "In the event either party initiates litigation for enforcement of any of the terms of this Agreement, the prevailing party shall be awarded judgment against the other party for all costs reasonably incurred by the prevailing party, including reasonable attorney fees." Still, this is generally of little consequence because Poplin is correct that the district court abused its discretion in that the amount it awarded Weltz is arbitrary and lacks an evidentiary foundation.

"Fees which are not supported by 'meticulous, contemporaneous time records' identifying the specific tasks being billed should not be awarded." *Davis v. Miller*, 269 Kan. 732, 748, 7 P.3d 1223 (2000). *Davis* suggested district courts look to the criteria of Rule 1.5(a) (2021 Kan. S. Ct. R 327) of the Kansas Rules of Professional Conduct to determine the reasonableness of the attorney fees. 269 Kan. at 751. This criteria includes:

> "(1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> "(3) the fee customarily charged in the locality for similar legal services;
> "(4) the amount involved and the results obtained;
> "(5) the time limitations imposed by the client or by the circumstances;
> "(6) the nature and length of the professional relationship with the client;
> "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> "(8) whether the fee is fixed or contingent." Rule 1.5(a).

There is no indication that Weltz ever provided information of this nature to the district court, and the district court's order is silent on these points. "'It is well-settled that the burden is on a party to designate a record sufficient to present its points to the appellate court and to establish its claims.'" *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). The district court's award of attorney fees

15

is not supported by substantial competent evidence and therefore amounts to an abuse of discretion. See *In re Marriage of Emerson*, No. 118,219, 2018 WL 3485663, at *8 (Kan. App. 2018) (unpublished opinion). The award of attorney fees for Weltz' discovery motion is reversed.

*Weltz' Cross-Appeal*

In her cross-appeal, Weltz argues the district court erred by not awarding additional attorney fees on her motion to enforce the property settlement agreement. She also argues the district court erred in failing to rule on her claim that she is owed additional supplemental maintenance for future distributions Poplin might receive because those distributions represent income earned for work Poplin performed between January 1, 2020, and April 1, 2020.

*Weltz is not entitled to additional attorney fees.*

There are several deficiencies in Weltz' briefing of this issue. She cites no standard of review and fails to support her argument with any citation to pertinent authority. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority, or in the face of contrary authority, is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Additionally, while Weltz offers a general explanation as to the basis for her argument, there is not a sufficient record to determine the reasonableness of any award she believes she may be entitled to. Weltz fails to cite to any record evidence reflecting that she requested and was denied a specific amount for attorney fees, much less sufficient facts to determine whether her request was reasonable. Again, it is Weltz' burden to designate a record sufficient to present her points to this court and to establish her claims. *Friedman*, 296 Kan. at 644. Her brief to this court likewise fails to clarify the precise amount she believes she is entitled to and why that amount is reasonable in this case.

16

As discussed above, a review of Weltz' motion reveals that she failed to provide the district court with the necessary information and tools to support an award for attorney fees. This court cannot find the district court abused its discretion in declining to award Weltz attorney fees where no evidence, much less substantial competent evidence, exists to support such an award. See *In re Marriage of Emerson*, 2018 WL 3485663, at *8.

*Weltz is not entitled to additional supplemental maintenance.*

Weltz accurately states that the district court failed to address the issue she raised on additional supplemental maintenance to which she might be entitled based on cash and retirement distributions Poplin had *earned.* That said, there is no need for this court to remand because the issue turns on a pure question of law, as well as an interpretation of the parties' property settlement agreement, and the relevant material facts are not in dispute. Weltz' argument on this issue generally runs contrary to her position on the first issue in her Appellee's brief. As discussed above, Poplin's obligation to pay supplemental maintenance under the parties' property settlement agreement arises when he *receives* cash or retirement distributions. When those distributions were *earned* is of no bearing under the plain language of the agreement. That document makes clear that Poplin's maintenance obligations terminate upon Weltz cohabitating. Weltz does not allege Poplin actually received any additional distributions between April 15, 2020, and May 20, 2020, the date she began cohabitating. Poplin does not have to pay supplemental maintenance for distributions received after Weltz began cohabitating. Weltz is entitled to no further supplemental maintenance beyond what Poplin owes for the April 2020 distributions.

As a final matter, both parties filed motions with this court under Supreme Court Rule 7.07(c) seeking award of attorney's fees. Poplin argues that he should be is entitled to such fees for the cost of defending against Weltz' cross-appeal. For her part, Weltz refutes Poplin's claims and argues she is entitled to attorney fees for the entire costs she

17

incurred before the district court, in filing her brief as Appellee, and as a product of her cross-appeal.

Under Supreme Court Rule 7.07(c) (2021 Kan. S. Ct. R. 52), this court may award attorney fees if it "finds that an appeal has been taken frivolously, or only for the purpose of harassment or delay."

> "An appeal is frivolous if it presents 'no justiciable question' and is 'readily recognized as devoid of merit,' meaning 'that there is little prospect that it can ever succeed.' *Blank v. Chawla*, 234 Kan. 975, Syl. ¶ 5, 678 P.2d 162 (1984). . . . Moreover, because Rule 7.07 requires a finding that 'an appeal' is frivolous, the presence of even a single nonfrivolous issue renders the entire appeal nonfrivolous. See *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647-48, 621 P.2d 411 (1980) (denying attorney fees for an appeal that was not 'totally without merit')." *In re Marriage of Ruda*, No. 121,746, 2020 WL 6372274, at *8 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. ___ (March 31, 2021).

*Poplin's motion is denied.*

Poplin asks this court to award attorney fees of $1,215 for 5.4 hours he spent responding to Weltz' cross-appeal. While his motion is more circumspect, supported with better documentation, and the amount requested largely appears to be reasonable, Rule 7.07(c) contemplates that this court "may assess . . . a reasonable attorney fee for the *appellee's counsel*." (Emphasis added.) (2021 Kan. S. Ct. R. 52).

The use of "may" vests this court with discretion on whether to award attorney fees. While Weltz' arguments on cross-appeal are far from persuasive, it cannot be said they are completely frivolous. Had Weltz taken the appropriate steps at the district court, she arguably may have had a sound basis, emanating from the parties' agreement, to obtain reasonable attorney fees for the costs incurred below. Further, a statutory basis

18

would have existed to award such fees. See K.S.A. 2020 Supp. 23-2715. Weltz' other argument on cross-appeal, however, strains the plain language of the parties' agreement. Yet it is perhaps no more unpersuasive than Poplin's interpretation of that agreement. It is also generally recognized this court should hesitate to award attorney fees when a party has not prevailed on all issues on appeal. See *Richardson v. Murray*, 54 Kan. App. 2d 571, 588, 402 P.3d 588 (2017). Although Poplin has prevailed on both issues raised in Weltz' cross-appeal, he only prevails on a single issue in his direct appeal. Given this court's discretion, it declines to award Poplin attorney fees based on the overall circumstances of this case.

Moreover, the plain language of Rule 7.07(c) relates to "attorney fee[s] for the *appellee's counsel*." (Emphasis added.) (2021 Kan. S. Ct. R. 52). Poplin does not have counsel, and he cites no Kansas caselaw holding that a pro se attorney litigant is entitled to an award of attorney fees under the rule. The only authority he cites relating to an award for attorney fees for a pro se attorney is *American Council of the Blind of Colorado, Inc. v. Romer*, 962 F.2d 1501, 1503 (10th Cir. 1992). But the award of attorney fees at issue in that case was premised on a statutory basis under 42 U.S.C. §1988, which the United States Supreme Court has interpreted to require "'[t]he prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such award unjust.'" 962 F.2d at 1503 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 [1968]).

The authority Poplin relies on is distinguishable from Rule 7.07(c). The attorney fee provision of 42 U.S.C. §1988(b) provides, in relevant part: "the court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee* as part of the costs." (Emphasis added.) In contrast, Rule 7.07(c) refers to "*attorney fee[s] for the appellee's counsel.*" (Emphasis added.) (2021 Kan. S. Ct. R. 52). Here, Poplin is not the appellee's counsel. He should not be awarded attorney fees as a pro se litigant simply because of the fact he is an attorney. Poplin admits the time spent

19

responding to Weltz' cross-appeal did not preclude him from accepting other work and did not impose any special time constraints. His request for attorney fees is denied.

*Weltz' motion is denied.*

Weltz seeks $10,808 for attorney fees on appeal and $2,766 for attorney fees incurred before the district court. We decline to honor her request for attorney fees in responding to Poplin's appeal because Poplin raised at least one meritorious issue on appeal—that the district court should not have awarded attorney fees for Weltz' motion to quash his discovery requests. See *Porter*, 228 Kan. at 647-48.

Weltz requests additional attorney fees for the cost of "prosecuting the cross-appeal and drafting [her] Motion for Attorney's fees." This argument lacks support under Supreme Court Rule 7.07(c), which provides for an award of attorney fees to the appellee "assess[ed] against the appellant or appellant's counsel." (2021 Kan. S. Ct. R. 52). For purposes of Weltz' cross-appeal, Poplin is not the appellant; he is the cross-appellee. Weltz cannot seek an award because Poplin has frivolously defended against the arguments raised in her cross-appeal. Any response by Poplin followed Weltz raising the issues on cross-appeal. And the issues raised in Weltz' cross-appeal were (1) adversely decided against Weltz (her request for additional attorney fees), or (2) not decided by the district court (her request for additional supplemental maintenance).

Additionally, as Poplin correctly notes in his response to Weltz' motion, the affidavit and billing records she attached to her motion failed to properly segregate the time spent working on the appellee's section of her brief from the time spent on the cross-appellant's portion of her brief. To the extent there is any differentiation between the two, it consists of only two entries, 1.2 hours for "Drafting notice of Cross Appeal," and 1.2 hours for "Drafting of Docketing Statement for Cross Appeal." In total, the attached billing statement reflects 41.8 hours of work performed in relation to all matters on

20

appeal. But it is largely impossible to differentiate between time spent on (1) Weltz' appellee's brief, (2) Weltz' cross-appeal, and (3) any time spent on her motion for appellate attorney fees. In fact, despite her request for attorney fees related to the present motion, Weltz fails to include anything showing the cost of it. Yet such an award is not authorized under the plain language of Supreme Court Rule 7.07(c), and Weltz fails to offer any argument or explanation for why it should be allowed.

As to her request for attorney fees related to the proceedings in the district court, such an award is denied because, as we noted previously, Weltz failed to properly present the issue to the district court and failed to properly brief the issue on cross-appeal.

Further, given that Weltz claims that the authority to award such fees is permitted under the parties' property settlement agreement, Poplin counters that they cannot be awarded because Weltz violated a condition precedent, specifically, the obligation to send written notice of the alleged failure to perform to the breaching party and allow 10 days for the breach to be cured. We agree. For Weltz to affirmatively rely on the attorney fee provisions of the agreement, she bears the burden to establish that she complied with all terms and conditions thereof. Weltz has not made such a showing, so her requests for attorney fees for all stages of the proceedings is denied.

Affirmed in part and reversed in part.