No. 114,908

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MELISSA L. KNOLL,
*Appellee*,

and

DEAN E. KNOLL,
*Appellant*.

SYLLABUS BY THE COURT

1.

A property settlement agreement incorporated into a divorce decree is a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties.

2.

The confirmation of a property settlement agreement and its merger into a decree of divorce does not abolish the contractual aspects of the agreement but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intentions of the parties.

3.

The primary rule of construction of a property settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties when the contract was made.

1

4.

The intent of the parties to a property settlement agreement must be determined from the agreement alone if the terms are unambiguous.

5.

An appellate court applies a bifurcated standard when reviewing a motion to modify maintenance.

6.

When reviewing a motion to modify maintenance, an appellate court reviews the trial court's factual findings for substantial competent evidence and for an abuse of discretion. To the extent the trial court's rulings involve interpretation of a settlement agreement, however, an appellate court exercises unlimited review.

7.

Substantial competent evidence constitutes such legal and relevant evidence that a reasonable person might accept as sufficient to support a trial court's conclusion.

8.

When engaging in review, an appellate court should not reweigh the evidence or the credibility of witnesses.

9.

The circumstances of the relationship, as well as the realities of modern married life, may be considered by a trial court in determining whether the evidence establishes cohabitation.

10.

In absence of an alternative definition of cohabitation within a separation agreement, Kansas defines cohabitation as living together as husband and wife, where there is a mutual assumption of marital rights, duties, and obligations like married people, which may but need not necessarily include sexual relations.

11.

The Kansas definition of cohabitation does not include a time component. The fact that two persons have been in a romantic relationship for a short time or that two persons have been living together for a short time does not mean cohabitation does not exist.

12.

A contract dividing financial responsibilities between two people living together does not prevent a court from finding cohabitation when the evidence otherwise suggests that the two people are cohabitating.

13.

Under the facts of this case, when a separation agreement provides that a spouse's obligation to pay maintenance terminates upon the ex-spouse cohabitating with another, a court does not have discretion to terminate maintenance at any date other than the date the cohabitation began.

14.

Where a trial court has the authority to grant attorney fees, its decision is reviewed under an abuse of discretion standard.

15.

A litigant must object to inadequate findings of fact and conclusions of law to give a trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. Where there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment.

Appeal from Barber District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed August 19, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Stephen M. Turley*, of Cleary, Wagle & West, of Wichita, for appellant.

*Alan C. Goering*, of Goering and Slinkard, of Medicine Lodge, for appellee.

Before MALONE, C.J., GREEN and GARDNER, JJ.

GREEN, J.: This litigation arises out of a property separation agreement for the termination of spousal maintenance upon the cohabitation of the petitioner. The respondent, Dean E. Knoll, brought an action to end his spousal maintenance to the petitioner, Melissa L. Knoll. The trial court determined that Melissa's cohabitation with her boyfriend, Trevor Mallet, commenced in May 2015. The trial court, however, determined that Dean's maintenance obligation would not terminate until October 1, 2015. On appeal, Dean contends that the trial court erred when it failed to terminate his maintenance obligation in May 2015. We agree. On the other hand, Melissa cross-appeals, arguing that the trial court erred by completely terminating Dean's maintenance obligation. We disagree. In addition, Melissa contends that the trial court erred by not awarding her attorney fees. We disagree. Accordingly, we affirm in part, reverse in part, and remand with directions.

On April 10, 2014, after over 15 years of marriage, Melissa and Dean divorced. According to their property settlement agreement, which was incorporated into their

4

divorce decree, Dean had to pay Melissa $1,238 per month in maintenance beginning on May 1, 2014, for a total of 5 years. Nevertheless, the agreement further stated that "[s]pousal maintenance shall terminate upon the death of either party or the remarriage or cohabitation of [Melissa]." The term cohabitation was not specifically defined within the property settlement agreement.

On May 21, 2015, Dean moved to terminate maintenance obligation. In his motion to terminate maintenance, Dean argued that Melissa was now cohabitating with Trevor.

The trial court held a hearing on Dean's motion on July 2, 2015. At the hearing, Dean testified that he learned at a May 2015 family therapy session with their minor child that Melissa and Trevor had moved in together. According to Dean, Melissa told the therapist that since moving in together with Trevor, she considered herself and Trevor as being part of "a blended family."

Melissa testified that she had been splitting her time evenly between her residence with Trevor in Andover, Kansas, and her mother's house in Medicine Lodge, Kansas, for the past 2 months. Apparently, Melissa and Dean used to rent the Medicine Lodge house from her mother before their divorce. Melissa explained that she had intended to move all her property from the Medicine Lodge house to her Andover residence with Trevor but had not done so because of her father's recent death and her mother's recent medical issues. Melissa further explained that the reason she had been splitting her time evenly between Medicine Lodge and Andover was because of her parents' recent medical issues. Melissa also testified that Dean understood that she would be entering pharmacy school when they finalized their property separation agreement and that she and Trevor were both students on a limited income.

In regards to her living arrangements with Trevor, Melissa testified that she and Trevor had no joint bank accounts, credit cards, or debt. Melissa further testified that she

5

and Trevor would split the groceries but that she would pay for all of her child's expenses. Melissa testified that she intended to take care of Trevor's minor children when he could not. Melissa also had three exhibits entered into evidence. Two of the exhibits were roommate agreements she had with Trevor. Outside of the addresses and total amount of rent, the substance of both roommate agreements were identical. Under the roommate agreements, Melissa and Trevor agreed to split rent, utilities, and "cleaning and other household chores" evenly. The other exhibit admitted into evidence contained photocopies of checks Melissa had made out to Trevor for rent and utilities.

On cross-examination, Melissa conceded that she and Trevor had been in a romantic relationship since February 2015, and they had moved in together in May 2015. Melissa admitted that she is currently able to live where she does because she is splitting living expenses with Trevor.

On October 7, 2015, the trial court ordered the termination of Dean's maintenance obligation based on the following evidence: (1) that Melissa and Trevor have been in a romantic relationship since February 2015; (2) that Melissa and Trevor decided to move in together after becoming romantically involved; (3) that Melissa and Trevor "moved into the same residence, which appears to be the mutual, sole residence of both parties"; (4) that Melissa and Trevor had equal access to their residence; (5) that Melissa and Trevor "share expenses approximately equally"; and (6) that Melissa and Trevor "have a definite understanding as to shared household duties." In reaching its decision, the trial court noted that the existence of the roommate agreement, that Melissa and Trevor did not comingle money, that Melissa and Trevor were not engaged nor did they consider themselves to be married, and that Melissa and Trevor were both students with a limited income supported the converse of Dean's motion: that Melissa and Trevor were not cohabitating.

Nevertheless, the trial court held that the factors supporting cohabitation outweighed the factors not supporting cohabitation because the evidence clearly showed that Melissa and Trevor decided to reside together primarily for romantic reasons not financial reasons. The trial court ordered the termination of Dean's spousal maintenance obligation effective October 1, 2015.

Following the issuance of the trial court's order, Dean moved to amend the termination date of his maintenance obligation. Dean argued that the correct date of termination was May 2015 because the trial court ruled that Melissa and Trevor had begun cohabitating at that time.

The trial court held a hearing on Dean's motion to amend judgment. The trial judge ultimately affirmed his prior ruling that Dean's maintenance obligation would terminate on October 1, 2015. In support of his ruling, the trial judge stated that he "believe[d] that . . . [he] appropriately exercised [his] equitable authority and discretion in this matter."

Dean timely appealed, and Melissa timely cross-appealed.

Because Melissa's cross-appeal, if successful, would be dispositive of Dean's contention that the trial court erred when it failed to terminate his maintenance obligation in May 2015, we will first consider Melissa's assertion that the trial court erred when it completely terminated Dean's maintenance obligation on October 1, 2015.

*Did the Trial Court Err by Terminating Dean's Maintenance Obligation?*

On appeal, Melissa argues that the trial court erred by finding that she and Trevor were cohabitating. In essence, Melissa argues that the trial court interpreted the facts incorrectly because she had been spending so much time in Medicine Lodge that one

7

could not consider her cohabitating with Trevor at their Andover residence. Melissa also argues that she could not have been cohabitating with Trevor because cohabitation is one step away from marriage and their roommate agreement proves that they were not in a marital-like relationship. Dean responds that the trial court correctly determined that Melissa and Trevor were cohabitating given Melissa's testimony at the evidentiary hearing.

An appellate court applies a bifurcated standard when reviewing a motion to modify maintenance. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011). An appellate court will review the trial court's factual findings for substantial competent evidence and whether the trial court abused its discretion. *Strieby*, 45 Kan. App. 2d at 961. To the extent the issue involves interpretation of the parties' settlement agreement, however, an appellate court exercises unlimited review. *Strieby*, 45 Kan. App. 2d at 961. Substantial competent evidence constitutes such legal and relevant evidence that a reasonable person might accept as sufficient to support the trial court's conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). When engaging in this review, appellate courts should not reweigh the evidence or the credibility of witnesses. *In re Marriage of Kuzanek*, 279 Kan. 156, 160, 105 P.3d 1253 (2005).

Melissa and Dean's property settlement agreement did not define cohabitation. In the absence of an alternative definition of cohabitation within a divorce settlement agreement, we are guided by the following definition of cohabitation: "'[To live] together as husband and wife [and] mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.'" *Kuzanek*, 279 Kan. at 158, (quoting *In re Marriage of Wessling*, 12 Kan. App. 2d 428, Syl. ¶ 6, 747 P.2d 187 [1987]). "The circumstances of the relationship, as well as the realities of modern married life, may be considered by the trial court in determining whether the evidence establishes cohabitation." *Wessling*, 12 Kan. App. 2d 428, Syl. ¶ 7.

8

Here, the evidence showed that Melissa and Trevor were in a romantic relationship before deciding to live together. Then, upon moving in together, Melissa and Trevor divided their financial burdens and domestic chores evenly. The fact that Melissa intended to move all of her belongings into the Andover residence with Trevor shows that she considered the Andover residence her primary residence. Furthermore, the fact that Melissa referred to herself and Trevor as being part of "a blended family" and the fact that Melissa admitted that she would at times care for Trevor's minor children further demonstrated that Melissa and Trevor were cohabitating. Because Melissa and Trevor were living together like husband and wife, were mutually assuming and dividing domestic duties, and were blending their children together into a family household, substantial competent evidenced showed that Melissa and Trevor were cohabitating.

Nevertheless, Melissa challenges this evidence by relying on an explanation of cohabitation in 2 Elrod and Buchele, Kansas Law & Practice, Kansas Family Law § 10.93, p. 55 (1999), which states:

> "There are various factors which can be used to determine if there is cohabitation that might relieve the former spouse. First, sharing a common residence; long term romantic involvement; shared assets or common bank accounts; joint contribution to expenses. If the recipient is in fact being supported by the cohabitant, there may [be] a strong case for termination based on there no longer being a need."

Based on this explanation, Melissa emphasizes that she and Trevor had only been in a romantic relationship since February 2015 and had only lived with each other on and off since May 2015.

Melissa's arguments, however, run counter to reason. First, Melissa has placed far too much emphasis on how long she and Trevor were romantically involved. The Kansas definition of cohabitation does not include a time component for determining when

9

cohabitation begins; instead, the important factor is whether a couple is living together as husband and wife. See *Wessling*, 12 Kan. App. 2d 428, Syl. ¶ 6.

Moreover, a long-term romantic involvement necessary for cohabitation is inconsistent with the lack of any time involvement necessary to enter into a valid common-law marriage under Kansas law. For example, in discussing the requirements for a valid common-law marriage in 1 Elrod and Buchele, Kansas Law & Practice, Kansas Family Law § 3.31 (1999), the authors explained that time is not a factor when determining the validity of a common-law marriage: "The requirements to form a common law marriage are a capacity to make an agreement to marry; a present agreement to be married; and a holding out to the public as husband and wife. *Time is not a factor*." (Emphasis added.) We note, without the need to cite any authority, a couple who are cohabiting under a valid common-law marriage are accorded more legal significance under Kansas law than a couple who are merely cohabiting ostensibly as husband and wife. Thus, if time is not a factor in determining whether a couple are involved in a valid common-law marriage under Kansas law, it would seem that a long-term romantic involvement is not an essential ingredient for establishing cohabitation under Kansas law.

Second, although Melissa highlights that she and Trevor had only lived with each other a short while, it is the fact of living with another person as husband and wife, not the length of time living together, which triggers cohabitation. See *Wessling*, 12 Kan. App. 2d, Syl. ¶ 6. Additionally, according to Melissa's own testimony, she intended to move all of her belongings from Medicine Lodge to her residence with Trevor in Andover. Melissa testified that the reason she had been splitting her time between her Andover residence with Trevor and her old home in Medicine Lodge was because of her parents' respective illnesses. In other words, but for her parents' illnesses, she would have been living with Trevor full time. As a result, Melissa's argument will not bear nearly the weight of reliance which she places upon it.

10

Third, to find that Melissa and Trevor were not cohabitating, this court would have to reweigh the evidence supporting the trial court's finding of cohabitation. Because this court is prohibited from reweighing evidence so long as the trial court's findings are supported by substantial competent evidence, Melissa's argument necessarily fails. See *Kuzanek*, 279 Kan. at 160.

Finally, Melissa further attempts to undermine the trial court's finding by asserting that the roommate agreement showed that she and Trevor were not in a marital-like relationship. Melissa cites language from the United States Supreme Court case *Obergefell v. Hodges*, 576 U.S. __, 135 S. Ct. 2584, 2608, 192 L. Ed. 2d 609 (2015), stating that marriage "embodies the highest ideals of love, fidelity, devotion, sacrifice, and family." Melissa then asserts that she and Trevor could not have been in a marital-like relationship because their roommate agreement did not include any of the marriage ideals detailed in *Obergefell*.

Yet again, the question of whether Melissa and Trevor were cohabitating is dependent upon whether their living arrangements indicated that they were cohabitating under Kansas' definition of cohabitation not *Obergefell*'s explanation of the ideals of marriage. Furthermore, although Melissa asserts that the roommate agreement demonstrates that she and Trevor were not living like a married couple, the roommate agreement divided financial expenses and domestic chores evenly, in a way that resembled the mutual assumption of marital rights. Last, as Dean argues in his brief, roommate agreements should not shield persons who are cohabitating with someone from having their spousal support terminated. Clearly, for policy reasons, it would be inappropriate to protect persons who are cohabitating with someone from the termination of their spousal maintenance just because they have attempted to mask their cohabitation by a contract. See *In re Marriage of Kuzanek*, 32 Kan. App. 2d 329, 331, 82 P.3d 528 (2004) (holding that "relationships should not be masked by use of a legal device, such as

11

a lease agreement if, when stripped away, cohabitation clearly exists."), *reversed on other grounds*, 279 Kan. 156, 105 P.3d 1253 (2005)

Accordingly, substantial competent evidence showed that Melissa and Trevor were cohabitating. Thus, the evidence supported the termination of Dean's maintenance obligation.

*Did the Trial Court Err by Terminating Dean's Maintenance Obligation in October 2015 Instead of May 2015?*

Next, we must consider whether the trial court correctly terminated Dean's maintenance obligation on October 1, 2015, despite the fact that it determined that Melissa and Trevor began cohabitating in May 2015. Dean argues that under the plain language of his and Melissa's property settlement agreement, Melissa's act of cohabitation immediately terminated his responsibility to make any further maintenance payments. Consequently, Dean argues that the trial court erred when it ruled that his maintenance obligation terminated on October 1, 2015, instead of May 2015.

Melissa responds that it would be error to terminate Dean's maintenance obligation as of May 2015 for the same reason "as the finding of cohabitation in the first instance." In essence, Melissa reasserts that termination of Dean's obligation to pay maintenance, in and of itself, was error. Therefore, according to Melissa, regardless of when the trial court terminated Dean's maintenance obligation, the trial court erred. Thus, Melissa never specifically addresses whether termination in October 2015, instead in May 2015, was error.

As discussed earlier, Melissa's arguments about why the trial court erred in terminating Dean's maintenance obligation were unpersuasive. Thus, Melissa's present argument is equally flawed. Moreover, because Melissa has failed to explicitly address

12

Dean's argument on appeal, she essentially concedes that the trial court's ruling was erroneous. In fact, it seems Melissa recognizes that termination in October was error. She implies that the trial court made its ruling because the court desired "to temper the harsh results" of discontinuing maintenance.

Nevertheless, despite this apparent concession, it is worth explaining why the trial court's ruling was clearly incorrect. Again, "[t]o the extent that this issue involves interpretation of the parties' settlement agreement, it is subject to normal rules regarding contract interpretation which require de novo review." *Strieby*, 45 Kan. App. 2d at 961. An appellate court must also adhere to the following rules concerning the interpretation of property settlement agreements:

> "A property settlement agreement incorporated into a divorce decree is 'a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties.' *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 (1972). '[T]he confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement, but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intentions of the parties.' 210 Kan. at 224. A written instrument may be construed and its legal effect determined by the appellate court. *Cornwell v. Jespersen*, 238 Kan. 110, 116, 708 P.2d 515 (1985). 'The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the contract was made.' *Hollaway v. Selvidge*, 219 Kan. 345, 349, 548 P.2d 835 (1976). The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972)." *Wessling*, 12 Kan. App. 2d at 430.

Here, Melissa and Dean's property settlement agreement explicitly stated that Dean's duty to pay maintenance "shall terminate upon . . . *cohabitation* of [Melissa]." (Emphasis added.) Therefore, the express provision of the agreement stated that Dean's

13

maintenance obligation would terminate once Melissa began cohabitating with another person. The term "shall" demonstrates that termination is mandatory, not discretionary. Consequently, the trial judge erred when he determined that he had discretion in determining the date when Dean's maintenance obligation would terminate.

This conclusion is also consistent with other Kansas cases. As noted in Dean's brief, in *In re Marriage of Quint*, 258 Kan. 666, Syl. ¶ 2, 907 P.2d 818 (1995), our Supreme Court held that "[m]aintenance payments automatically cease upon the payee's remarriage when the judgment awarding maintenance so provides." See also *Saroff v. Haun*, 28 Kan. App. 2d 471, 473-74, 17 P.3d 943 (2001) (reaffirming that spousal maintenance terminates automatically upon remarriage when so provided for by separation agreement). Although these cases involve the act of remarriage instead of the act of cohabitation, the rule should apply equally to both situations: the obligation to pay maintenance terminates automatically the moment one party commits an act that requires the termination of maintenance under the separation agreement. Furthermore, the Illinois Court of Appeals reached the same conclusion in *In re Marriage of Gray*, 314 Ill. App. 3d 249, 252-53, 731 N.E.2d 942 (2000), holding that maintenance automatically terminates when the maintenance recipient cohabitates with another.

In summary, because the trial court determined that Melissa began cohabitating with Trevor in May 2015, the trial court erred when it ruled that Dean's maintenance obligation would terminate on October 1, 2015. Accordingly, we reverse and remand with directions to terminate Dean's maintenance obligation effective May 2015.

*Did the Trial Court Err by Not Awarding Melissa Attorney Fees?*

Finally, Melissa argues that the trial court erred by not granting her request for attorney fees. Although Melissa did not file a formal motion for attorney fees, she did make an oral request for attorney fees at the evidentiary hearing on cohabitation. In her

14

brief, Melissa asserts that the trial court erred by both failing to address her attorney fees request and by not granting her attorney fees request. Nevertheless, Melissa's argument fails.

"Where the trial court has the authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard." *Snider v. American Family Mut. Ins. Co*., 45 Kan. App. 2d 196, 199, 244 P.3d 1281 (2011), *aff'd* 297 Kan. 157, 298 P.3d 1120 (2013).

First, as Dean argues in his brief, Melissa's argument must fail because she did not object to the trial court's failure to rule on her attorney fees request. Our Supreme Court has held: "[A] litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. Where there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment." *Hill v. Farm Bur. Mut. Ins. Co*., 263 Kan. 703, 706, 952 P.2d 1286 (1998). Accordingly, Melissa had a duty to raise to the trial court that it never addressed her request for attorney fees. Because Melissa failed to object to the trial court's lack of findings, she is barred from raising this issue on appeal.

Second, even if Melissa had preserved her argument, she simply argues that she was entitled to attorney fees without further explanation. Melissa does not explain what factors support an award for attorney fees. Moreover, she does not cite any law in support of her argument. A point raised incidentally in a brief and not argued or supported therein is deemed waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Thus, regardless of the preservation issue, Melissa has failed to establish that she was entitled to attorney fees in the district court.

After oral argument in this appeal, Melissa timely filed a motion asking that this court order Dean to pay her attorney fees for this appeal. In her motion, Melissa relies on Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72), permitting an award of attorney fees on appeal when the trial court has the authority to award attorney fees. In addition, Melissa contends that she should be awarded attorney fees under Rule 7.07(c). This subsection deals with the filing of a frivolous appeal. We note, however, that Dean has prevailed on all the relevant issues in this appeal. As a result, we see no reason to saddle Dean with Melissa's attorney fees. Thus, we deny Melissa's motion for attorney fees and costs.

Affirmed in part, reversed in part, and remanded with directions to terminate the maintenance obligation as of May 2015.