NOT DESIGNATED FOR PUBLICATION

No. 123,225

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DAVID G. BLOSSER,
*Appellant*,

and

PEGGY E. BLOSSER.
*Appellee.*

MEMORANDUM OPINION

Appeal from McPherson District Court, MARILYN M. WILDER, judge. Opinion filed June 18, 2021. Reversed and remanded.

*Tim R. Karstetter*, of Karstetter & Bina, L.L.C., of McPherson, for appellant.

*Catherine Craft*, of Achterberg, Angell & Craft, LLC, of Salina, for appellee.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM: David G. Blosser appeals the district court's finding that his ex-wife, Peggy E. Blosser, retained an interest in his Kansas Public Employees Retirement System (KPERS) account, arguing the district court improperly added terms to the parties' unambiguous divorce decree. But we find the decree ambiguous and remand for an evidentiary hearing.

1

*Factual and Procedural Background*

In May 2019, David petitioned the district court for a divorce from Peggy, citing incompatibility. Both parties filed domestic relations affidavits, participated in a settlement conference, and reached a settlement agreement. The district court issued a divorce decree, incorporating that agreement.

Under the agreement and divorce decree, David was awarded the "KPERS 457 account and KPERS account that pays a monthly benefit" as his "sole and separate property." The decree made no other reference to those accounts.

A few months after the divorce decree was filed, a KPERS representative told David that he would need a court order to remove Peggy from his accounts. So David moved the court to set aside the divorce decree or rule that Peggy had no interest in his KPERS accounts. Peggy responded that although the divorce decree listed the KPERS accounts as David's sole and separate property, David had named Peggy as a joint annuitant of his KPERS accounts, and the decree did not terminate that interest.

The parties agree that:

- Peggy is a joint annuitant on the KPERS monthly account, so David receives a reduced monthly benefit;
- if Peggy remains a joint annuitant and survives David, she will receive a payment upon his death; and
- if Peggy is removed as an annuitant, David's monthly payments will increase, and Peggy will receive nothing upon David's death.

The district court held a hearing yet neither party testified. Instead, David's counsel accused Peggy of having created the joint annuitant issue and maintained that the

2

parties had never discussed or agreed that Peggy would retain any interest in the KPERS accounts. To the contrary, Peggy's attorney claimed that during settlement negotiations, the parties had discussed their options for the monthly KPERS account, including removing Peggy as the joint annuitant. She said that the parties had spoken with a KPERS attorney and knew the decree needed special language to remove Peggy from the account. She argued that David's attorney, as the drafter of the agreement, knew or should have known about KPERS' requirements yet failed to terminate Peggy's interest in the account, so the court should strictly construe the agreement against David.

The court took the matter under advisement to consider the merits and whether it had jurisdiction to modify a final divorce decree. Then, in a written order, the district court denied David's motion, finding the terms of the decree unambiguous. The court described the KPERS account as having an ownership interest and a beneficial interest. It held:

- the decree showed that the property interest was David's;
- the decree was silent about Peggy's beneficial interest;
- the decree unambiguously established that the beneficial interest was still Peggy's because the decree did not state that Peggy's previously designated interest was terminated;
- the parties had not orally agreed to terminate Peggy's interest;
- the decree specifically terminated the parties' previous beneficiary designations for any life insurance policies, but the decree did not similarly terminate the beneficiary designation in the KPERS account; and
- the relative complexity of the parties' property division showed it was unlikely that the parties accidentally omitted a necessary provision rather than considering but ultimately deciding not to include it.

3

David appeals.

*Standard of Review and Basic Legal Principles*

Generally, a district court has no continuing jurisdiction or power of modification over a division of property after entering an original divorce decree. *Lewis v. Lewis*, 4 Kan. App. 2d 165, 166, 603 P.2d 650 (1979). Once the divorce decree becomes final and the time for appeal has passed, the district court's jurisdiction is limited to enforcement or clarification of the order.

A property settlement agreement incorporated into a divorce decree functions both as a contract between the divorcing parties and an order of the district court. See *Dozier v. Dozier*, 252 Kan. 1035, 1039, 850 P.2d 789 (1993); *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939-40, 381 P.3d 490 (2016). We thus apply the rules of contract interpretation to the Blosser's property settlement agreement. As a general matter, a court should construe a contract to give effect to the intent of the parties consistent with the plain meaning of the language used and considering the whole agreement. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d 1238 (2013) (whole agreement); *Hefner v. Deutscher*, 58 Kan. App. 2d 58, Syl. ¶ 1, 464 P.3d 367 (2020) (plain language). If the operative language is unambiguous, those words necessarily govern the rights and obligations of the contracting parties.

A contract is unambiguous "if the language . . . is clear and can be carried out as written." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). On the other hand, an ambiguous contract "must contain provisions or language of doubtful or conflicting meaning." 250 Kan. 676, Syl. ¶ 2. Typically, we give the words in a contract their common or customary meaning. *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, 550, 304 P.3d 1226 (2013). Ambiguity then arises only if "the face of the instrument leaves it genuinely uncertain which one of two or more

4

meanings is the proper meaning." *Catholic Diocese v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992). Whether a contract is ambiguous presents a question of law, as does the interpretation of an unambiguous contract. See *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

*Analysis*

David argues that the divorce decree is unambiguous. He contends that the decree's language providing that the KPERS accounts are his "sole and separate property," without specifically retaining Peggy's interest in either account, shows the parties did not intend for Peggy to have such an interest. Peggy seems to agree that the decree is unambiguous, yet she ascribes the opposite meaning to the same language. She argues that because David knew about the KPERS' requirement yet drafted the agreement without terminating her interest, the lack of termination language in the decree shows the parties' intent for her to retain her beneficial interest.

We find the decree ambiguous because both meanings ascribed to it by the parties can reasonably be construed from its language—the divorce decree leaves it genuinely uncertain which one of the above meanings is proper. Because the decree's language is ambiguous, we may consider extrinsic or parol evidence to construe it. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992); *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 838-39, 508 P.2d 889 (1973). Yet we have no such evidence here. Although the district court held a hearing, neither party testified.

And neither did counsel, although the district court relied on some of counsel's assertions. In finding the decree unambiguous, the district court relied largely on assertions of counsel unaccompanied by support in the record. For example, the court found that the parties had not orally agreed to terminate Peggy's interest, yet the record contains no evidence on that matter. The court found that the parties had specifically

5

discussed the possibility of terminating Peggy's interest but could not agree on the terms to make that happen. But David's counsel had argued to the contrary—that the parties had mentioned nothing about Peggy's interest in the KPERS accounts until *after* the divorce decree was filed. So the assertions of counsel conflict. Peggy's counsel asserted that she had letters showing counsel's negotiations about Peggy's KPERS' interest, but we have no letters or dates to assist us. Yet the district court found that the parties apparently agreed on that issue and did not make a credibility call.

The court also found that the decree's express termination of the parties' life insurance policy beneficiary designations supported an inference that because the parties did not similarly terminate the KPERS beneficiary designation, the parties intended not to do so. But David's counsel asserts that the parties had no life insurance policy and that the life insurance clause is merely stock language, not reflective of the parties' intent. Besides, Peggy is not a mere beneficiary but a joint annuitant.

We cannot tell from the record whether the parties to the property settlement agreement overlooked a particular asset or liability. David suggests that the decree's language requiring him to pay Peggy $75,000 within 90 days of the decree reflects some quid pro quo for terminating her KPERS interest. But neither the rules of contract construction nor the facts of record help us resolve these and other details which may affect the outcome of this dispute.

We could assume from the breadth of the divorce decree that the parties meant to wipe the slate clean between them. Yet that would be merely an assumption, as the decree lacks broad language relinquishing Peggy's claims, inchoate rights, or expectancies to KPERS benefits, unlike in *Hollaway v. Selvidge*, 219 Kan. 345, 348-49, 548 P.2d 835 (1976). There, the decree said, "neither party shall make any claim, except as herein agreed," and "each party relinquished his or her right, title and interest in the property allotted the other." 219 Kan. at 350. We thus reverse the decision and remand

for an evidentiary hearing to determine the parties' intent about the KPERS accounts and to enforce or clarify the divorce decree accordingly.

Reversed and remanded with directions.