NOT DESIGNATED FOR PUBLICATION

No. 124,478

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ALICIA BEAN,
*Appellee*,

and

DENNIS JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed January 27, 2023.
Affirmed.

*Daniel C. Walter*, of Walter, Walter & Peterson, of Norton, for appellant.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellee.

Before HILL, P.J., BRUNS and WARNER, JJ.

PER CURIAM: In this divorce action, Dennis Johnson appeals from the district court's division of marital property and its decision not to require his ex-wife, Alicia Bean, to pay spousal maintenance. On appeal, Johnson contends that the district court abused its discretion in dividing the property and by failing to properly consider Bean's alleged dissipation of assets. Johnson also contends that the district court abused its discretion by failing to take into consideration his alleged need for spousal maintenance and Bean's ability to pay. Based on our review of the record, we conclude that the district court appropriately followed Kansas law regarding the division of marital property and

1

regarding an award of spousal maintenance. Moreover, we conclude that the district court did not abuse its discretion in dividing the marital property or in denying Johnson's request for spousal maintenance. Thus, we affirm.

FACTS

Bean and Johnson were married on April 28, 2011. At the time of their marriage, Bean was 32 years old and Johnson was 38 years old. There were no children born of the marriage of Bean and Johnson. However, at the time of her marriage to Johnson, Bean had two minor children from a previous marriage. Johnson had not been previously married and does not have any children.

On July 29, 2019, Bean filed a petition for divorce. In addition, Bean filed a motion for temporary orders in which she requested that the district court enter temporary orders regarding the marital residence, the parties' vehicles, and other marital property. In granting the motion for temporary orders, the district court ordered—among other things—that both parties were restrained from "[m]aking withdrawal for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account."

On August 12, 2019, Johnson filed an answer to Bean's petition. In his answer, Johnson requested that the district court order Bean to pay him temporary and permanent spousal maintenance. However, he did not file a motion seeking temporary maintenance, and none was awarded during the pendency of the case. Although the parties subsequently participated in mediation, they were unable to reach an agreement.

Johnson filed a Domestic Relations Affidavit (DRA) on April 30, 2021. In his DRA, Johnson stated that his monthly gross income was $1,500 and his net monthly income was $1,200. Johnson attached a proposed property division to his DRA in which

he itemized the items of personal property and debt to be divided as well as his suggested division. He also proposed that Bean pay him an equalization payment in the amount of $16,355. It does not appear that Bean ever filed a DRA during the pendency of the divorce action.

The district court held a bench trial on June 1, 2021. Bean testified that she married Johnson after she had completed medical school and finished her residency in family medicine. At the time the parties were married, Bean was working as a doctor at a community health center in Junction City. She was making approximately $125,000 per year and Johnson was making approximately $25,000 per year as an auto body technician.

Bean also testified that she developed pulmonary arterial hypertension and had to quit her job in Junction City due to the high workload. In 2015, the parties moved to Russell where Bean found employment at a hospital making approximately $200,000 per year plus bonuses. About four months after filing for divorce, Bean quit her job at the hospital in Russell. According to Bean, she did so because of blood clots that were caused by her underlying medical condition. The hospital in Russell provided Bean with a three-month severance package.

Regarding her health, Bean testified that her condition was worse at the time she filed the petition for divorce. According to Bean, in 2019 her doctors estimated she probably had about four years to live, but she had stabilized to some degree at the time of trial so long as her blood clots did not return. Bean testified about the uncertainty of her condition and indicated that she would likely need to be on oxygen for the rest of her life. She also reaffirmed her deposition testimony in which she testified that her health condition would likely shorten the length of time that she could work. Nevertheless, she testified that she was "stable" and "ready to work" at the time of trial.

3

The parties' tax returns for 2018, 2019, and 2020 were admitted into evidence at trial. In 2018, the parties' gross income was $282,141, and in 2019, their gross income was $215,074. Bean testified that most of the couple's income for those years came from her salary and benefits. She also testified that she was unemployed for most of 2020. As a result, the parties' gross income dropped to $116,382. Of this amount, only $37,104 came from wages and salary. The bulk of their income came from other sources including $47,050 received from pensions and annuities.

At the time of trial, Bean testified that she had about $55,000 outstanding in student loan debt from her undergraduate studies incurred before the marriage. In addition, Bean had an outstanding loan of $19,000 for her son's education that she incurred after the filing of the divorce petition. She also testified that she had incurred approximately $44,500 in medical debt during the course of the marriage. She further testified that she had about $12,400 in credit card debt and that the majority of this debt had been incurred after she filed the petition for divorce.

Bean admitted that after filing the petition for divorce, she cashed out her 401(k) retirement account in violation of the temporary orders entered by the district court. She testified that she netted about $35,000 from the 401(k) account. According to Bean, she used the money to pay bills and buy groceries while she was unemployed. In May 2021, Bean began working as an independent contractor in Marshall, Missouri, where she resided at the time of trial. Bean testified that she was paid $100 per hour with no benefits and that she worked approximately 37 hours per week in this position.

At trial, Johnson testified that he was working at a supermarket in Russell making $10.25 per hour. According to Johnson, he had not applied for any jobs in the autobody shop business due to a "cancer scare" from exposure to chemicals in the workplace. Johnson testified that he has never made more than around $25,000 per year. He further testified that he was currently living in a single car garage that he converted into sleeping

4

quarters. Johnson indicated that the rent for the space was $500 per month and that his parents had been paying this expense for him.

Moreover, Johnson testified that while the divorce was pending, the parties agreed to sell the marital residence and divide the proceeds. Because the parties sold the residence for $312,000, it was estimated that the net proceeds to be divided would be $27,266.90. However, Johnson testified that the proceeds ended up being significantly less than the estimate because Bean had deferred several mortgage payments while she was unemployed. As a result, the net proceeds to be divided ended up being only $3,868.21.

Johnson requested that the district court award him spousal maintenance in the amount of 25 percent of Bean's gross income on a calendar basis of the district court's choosing. The 25 percent amount represented the difference between Bean's income and his income at the time of trial. He also requested an escalator clause that would allow for adjustments should there be changes in the parties' gross incomes during the maintenance period. In addition, Johnson asked the district court to take into consideration Bean's dissipation of assets when making its division of assets and debts.

After the presentation of the evidence and arguments of counsel, the district court took a 30-minute recess. When the trial resumed, the district court announced its decision from the bench. The district court first found that the parties were incompatible and granted the divorce. The district court then noted that the parties' household personal property had already been divided by the parties, and it found this division to be just, fair, and equitable. Using Johnson's proposed division of property document as a guide and taking into consideration the additional debt that had been incurred by Bean during the pendency of the divorce, the district court divided the remaining property and debt.

The district court found that both parties were in a negative net worth position. Specifically, it found Bean to be in a negative position of $13,643 and Johnson to be in a negative position of $1,660. The district court then found the value of the 401(k) retirement account that had been liquidated by Bean to be $32,000. Because the district court found Bean to be in a $12,000 worse financial position than Johnson, it subtracted this amount from the value of the 401(k) account. The district court then divided the remaining $20,000 equally between the parties and granted a $10,000 judgment to Johnson to be paid by Bean within six months.

Turning to the issue of spousal maintenance, the district court considered the factors set forth by this court in the case of *In re Marriage of Hair*, 40 Kan. App. 2d 475, 484, 193 P.3d 504 (2008). After considering each of these factors, the district court denied Johnson's request for maintenance. The district court explained that it did not "have enough evidence of either ability to pay by [Bean] or of need by [Johnson]." The district court reasoned that Bean's "medical condition is such that it has severely affected her earning capability, but nobody knows to the extent . . . [i]f she did not have the medical condition that she testified to, this would be a case where some maintenance would have been called for." Finally, the district court ordered the net equity from the sale of the home—in the amount of $3,868.21—to be divided equally between the parties.

On September 2, 2021, the district court entered a journal entry consistent with the decision it had previously announced from the bench. In addition, the district court clarified that Bean would be responsible for all medical bills in her name in the amount of approximately $44,693.61, all credit card debt in the amount of approximately $12,437.59, past unpaid COBRA payments in the amount of $11,000, and a $5,000 debt owed to her parents. The district court also held that Johnson is responsible for any debt acquired in his name after the parties separated in July 2019. The district court also found that a S10 pickup truck was being driven by Bean's son and would remain with her.

6

*Division of Marital Property*

On appeal, Johnson contends that the district court abused its discretion in dividing the marital property of the parties. Specifically, he argues that the district court erred by failing to address the ownership of the S10 pickup truck being used by Bean's son and by failing to hold her accountable for her dissipation of assets while the divorce was pending. Johnson claims that Bean dissipated the equity in the marital home by deferring mortgage payments, by liquidating her 401(k) retirement account in violation of the district court's temporary orders, and by losing track of $30,000. In response, Bean contends that the district court carefully considered the evidence—including the alleged dissipation of assets—and divided the marital property in a just and reasonable manner.

A district court's division of property in a divorce action is governed by K.S.A. 2021 Supp. 23-2801 et seq. A district court has broad discretion when adjusting the property rights of the parties involved in a divorce action. As a result, we are to review a district court's division of property and debt for abuse of discretion. In doing so, we are not to disturb a district court's exercise of discretion absent a clear showing of abuse. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); see *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). Likewise, we are not to reweigh the evidence or replace our judgment for that of the district court. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 935, 381 P.3d 490 (2016).

Judicial action constitutes an abuse of discretion only if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). A district court abuses its discretion "if no reasonable person would agree with the court's decision." *Thrailkill*, 57 Kan. App. 2d at 261. The party asserting the district court abused its discretion—in this

case Johnson—bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Under K.S.A. 2021 Supp. 23-2801(a), marital property is all of the property owned by married persons at the time of marriage as well as all of the property acquired by either spouse during the marriage. In dividing marital property, a district court is to consider the following factors, under K.S.A. 2021 Supp. 23-2802(c), when determining the division of marital property:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Although a district court must divide marital property in a just and reasonable manner, the division need not be equal. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010).

Here, the record reflects that the district court carefully listened to the testimony of the parties, reviewed the exhibits presented, and heard the arguments of counsel. In announcing its decision from the bench, the district court explained at length its reasons for the way in which it divided the parties' property and debt. Moreover, the district court subsequently entered a journal entry in which it further explained and expanded upon its decision.

The district court found that in light of the parties limited assets and substantial debt—including Bean's medical expenses—both parties are in a negative net worth

8

position. Based on our review of the record, we find this finding to be supported by substantial evidence. As we will discuss further in the next section of our opinion, this case is unusual in that although there is a substantial difference in the income of the parties, Bean's future earning capacity is questionable in light of her medical history and prognosis. Although reasonable people could certainly differ regarding how to divide the marital property and debt in this case, we do not find the district court's division to be unreasonable.

Regarding the S10 pickup truck, the district court found in its journal entry that it should "remain with" Bean. The stated rationale for this decision is because the pickup is being used by Bean's son. Even though the language used by the district court could have been worded more clearly, it is apparent that the district court granted this item of personal of property to Bean. Again, reasonable people may differ regarding this award. Nevertheless, we do not find it to be unreasonable based on the district court's explanation. Moreover, this award is consistent with the district court's temporary orders as well as Johnson's proposed division of property.

Johnson also argues that the district court abused its discretion by failing to hold Bean accountable for her dissipation of assets. Kansas law states that courts may properly consider a party's dissipation of assets when dividing property. K.S.A. 2021 Supp. 23-2802(c). In the case of *In re Marriage of Rodriguez*, 266 Kan. 347, 350-52, 969 P.2d 880 (1998), the Kansas Supreme Court found that a district court has "wide latitude to divide marital property and this latitude provides the judge with discretion to consider whether marital assets were lost as a result of the wrongful conduct of one of the parties to the marriage." 266 Kan. at 352.

In this case, the district court recognized that Bean dissipated assets in violation of its temporary orders. Specifically, the district court found in its journal entry that Bean "failed to obey the Temporary Order filed herein preventing her from taking distributions

9

from her 401(k) plan with American United. As a result of [Bean's] actions, the Court finds that [Johnson] shall be entitled to judgment against [Bean] in the amount of $10,000 . . . ." Yet again, reasonable people could disagree regarding how to handle Bean's wrongful conduct. However, we do not find that the district court's decision falls outside the "wide latitude" granted to judges in dividing marital property.

Johnson also argues that Bean dissipated assets by deferring mortgage payments on the marital residence. Although the district court recognized that the deferment had an impact on the net proceeds from the sale of the real property, it also considered Bean's circumstances at the time she deferred making payments. A review of the record reflects that Bean continued to make the mortgage payments during her three months' severance period after leaving her job at the hospital in Russell. However, she stopped making mortgage payments when the money from her severance package ran out. Consequently, the district court found that deferral of mortgage payments was "a consequence of her being unemployed." This finding is supported by substantial evidence in the record. As such, the decision regarding how to handle the division of the net proceeds from the sale of the real property was left to the discretion of the district court.

Finally, Johnson argues that Bean "lost track of $30,000" from her bank account. When asked by Johnson's attorney at trial about this $30,000 withdrawal, Bean testified that she "may have been establishing some new accounts" and transferring money into a new account due to fraudulent activity on her bank account. Johnson's counsel asked Bean how she accumulated $30,000, and she replied that it was likely from a temporary position she held in the emergency department in Junction City before moving to Marshall. Although Bean's response may have led to further cross-examination, it appears that the matter was not pursued further. Likewise, it is apparent that the district court did not find Bean's answer to lack credibility because it did not address this withdrawal in its findings. Once again, although a reasonable person might have handled this issue differently, we do not find that the district court abused its discretion.

10

In summary, we find that the district court's division of the parties' property and debt was reasonable and not based on a mistake of fact or a mistake of law. In addition, we find the district court's decision to be supported by substantial competent evidence. Granted, this case presents unusual circumstances and reasonable minds could certainly differ regarding the best way to divide the marital property and debt of the parties under the unique circumstances presented in this case. Notwithstanding, we find that the division of property and debt set forth in the journal entry falls within the wide latitude and discretion granted to district courts.

*Spousal Maintenance*

Johnson also contends that the district court erred by denying his request for spousal maintenance. He argues that despite Bean's medical condition, the testimony presented at trial indicated that her condition is currently stable and that she is able to work as a physician. In support of his argument, Johnson points to evidence showing that Bean has made substantially more money than he has both historically and currently. He also points to the disparity in their educational levels and earning ability.

In response, Bean contends that the district court complied with Kansas law regarding an award of spousal maintenance and made a reasonable decision. In particular, Bean argues that the district court properly considered the factors set out in *Hair*, 40 Kan. App. 2d at 484. She highlights the district court's finding that both parties have negative net worth. In addition, Bean points to her medical condition and the limitations she will likely have working as a physician in the future.

In Kansas, an award of spousal maintenance is discretionary and not mandatory. K.S.A. 2021 Supp 23-2902(a) allows—but does not require—a district court to award spousal maintenance—formerly called alimony—to either party as an allowance for future support in an amount that it finds to be fair, just, and equitable. Accordingly, a

11

district court has wide latitude in determining whether to award spousal maintenance within the constraints of K.S.A. 2021 Supp. 23-2901 et seq. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996).

We review a district court's decision regarding spousal maintenance for abuse of discretion. *Thrailkill*, 57 Kan. App. 2d at 257. As discussed in the previous section of this opinion, judicial action constitutes an abuse of discretion only if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow*, 308 Kan. at 893. Again, the party asserting the district court abused its discretion—in this case Johnson—bears the burden of establishing an abuse of discretion. *Gannon*, 305 Kan. at 868.

Again, it is not the role of this court to reweigh the evidence or to replace our judgment for that of the district court. *Knoll*, 52 Kan. App. 2d at 935. Instead, it is our role to determine whether the district court acted reasonably and complied with the statutes authorizing an award of spousal maintenance. See *Vandenberg*, 43 Kan. App. 2d at 706-07. Based on our review of the record on appeal, we find that the district court's decision to deny Johnson's request was reasonable under the unique circumstances presented in this case.

When considering whether to award spousal maintenance, the district court may consider factors similar to those set forth in K.S.A. 2021 Supp. 23-2802(c). See *Hair*, 40 Kan. App. 2d at 484 (listing factors to consider when awarding maintenance) (citing *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 [1976]). But a district court should not award spousal maintenance based on only one factor. Moreover, an income disparity between the parties alone does not require an award of maintenance. *Hair*, 40 Kan. App. 2d at 484-85 (finding no abuse of discretion in denying maintenance to an ex-spouse despite an income disparity of nearly $5,000 per month in gross income).

12

A review of the record in this case reveals that the district court diligently reviewed the evidence presented by the parties and considered the factors set forth in the case of *In re Marriage of Hair* in making its decision. In doing so, the district court found that Johnson's earning capacity was "basically the same as when he came into the marriage, if he would go back into his chosen profession or vocation." The district court noted that Johnson had chosen not to return to the auto body field due to health concerns from exposure to chemicals in the workplace. Regarding Bean's earning capacity, although the district court recognized that she is a physician with the potential of making substantially more money than Johnson, it found that her "serious medical condition . . . inhibits and affects her ability for full-time employment."

In considering the parties' respective needs, the district court again found that Johnson's earning capacity had not changed since he entered the marriage. The district court also noted that Johnson received financial support from his parents. Turning to Bean's ability to pay spousal maintenance, the district court found that her prospective earning capacity was uncertain in light of her medical condition. Nevertheless, the district court recognized that if Bean "did not have the medical condition that she testified to, this would be a case where some maintenance would have been called for."

The district court noted that the length of the marriage would tend to support an award of spousal maintenance. However, the district court found it to be significant that the parties are both in a negative net worth position. The district court found that family ties and obligations weighed in favor of Bean because she had children to provide for while Johnson does not have children. Finally, regarding the overall financial situation of the parties, the district court found that Bean had a substantial amount of individual debt that placed her in a poor financial situation.

Certainly, this is a unique case due to a number of factors including the significant difference in education between the parties and the serious health condition from which

13

Bean suffers. As a result, the future is—at best—uncertain. Although we are empathetic to Johnson's position and agree that there is evidence in the record that would support an award of spousal maintenance, the record also contains substantial competent evidence supporting the district court's decision to deny Johnson's request for maintenance. Because we find that the district court's decision to be reasonable under the circumstances presented and that it made no mistake of law or fact, we conclude that it did not abuse its discretion in denying Johnson's request for spousal maintenance.

Affirmed.