NOT DESIGNATED FOR PUBLICATION

No. 127,674

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JACQUELYN STEELE, *Appellee*,

and

JUSTEN STEELE, *Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; STEPHANIE E. GOODENOW, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*J. Steven Schweiker*, of Overland Park, for appellant.

*Weston R. Moore*, of Olathe, for appellee.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: In this divorce action, Justen Steele appeals from the district court's division of marital property from his marriage with Jacquelyn Steele. The parties had been married about two years when Jacquelyn petitioned for divorce. On appeal, Justen contends that the district court abused its discretion in dividing the property in three ways. First, he argues that the district court abused its discretion in dividing the marital portion of the house in which the parties lived during the marriage. Second, he argues that the district court abused its discretion in dividing the parties' retirement or pension accounts. Third, he argues that the district court abused its discretion by including the proceeds from an insurance settlement as part of the property division. Based on our

review of the record, we conclude that the district court appropriately followed Kansas law regarding the division of marital property and did not abuse its discretion in dividing the marital property. Thus, we affirm.

FACTS

The Steeles were married on May 22, 2021. Three years before the marriage, Jacquelyn purchased a house for $205,000 and resided in it with her daughter from a prior marriage. She made an initial down payment of about $22,000 and paid an additional $28,000 to make renovations to the house.

During the marriage, Justen, Jacquelyn, and her daughter lived in the house. The parties then made several improvements—to the house—upon getting married. Jacquelyn usually paid for the materials and Justen performed much of the physical labor. At the time Jacquelyn filed for divorce on August 18, 2023, a new deck on the house had not been completed. According to Justen, the deck was 90% finished, while Jacquelyn claimed that she had to pay a contractor $5,700 to finish the deck because it was unsafe.

The district court held a bench trial on February 12, 2024. Before trial, the parties agreed upon the division of much of their marital property. Likewise, they agreed that neither party was to receive spousal maintenance. Additionally, the parties agreed that the real property should remain with Jacquelyn subject to the mortgage and any other indebtedness related to the house. The main focus of the trial was over the division of equity in the house, the division of the parties' retirement accounts and pension plan, and whether the proceeds from an insurance settlement should be included as part of the marital estate.

At trial, the parties appeared in person and by their attorneys. Justen and Jacquelyn were the only parties to testify. Along with their testimony, both parties submitted

spreadsheets detailing their positions regarding how the district court should divide their property. Justen also introduced a document showing his contributions to his pension plan during the marriage.

On February 28, 2024, the district court issued a comprehensive 11-page journal entry explaining its decision regarding the division of property. In the journal entry, the district court found that the real property was a premarital asset owned by Jacquelyn and that she had put down a $22,000 down payment to buy the house. It also found that Jacquelyn had made about $28,000 of improvements to the real estate before the marriage.

The district court accepted Justen's valuation of the real property based on appraisals conducted by the Johnson County Appraiser's Office. Based on these appraisals, it found the real estate had appreciated $62,468 during the marriage. Although the district court recognized that Justen had performed "sweat equity" over the course of the marriage, it concluded that "improvements to property are a routine part of being married" and that "the evidence is insufficient for the court to quantify any such amounts."

The district court did factor in an 8% commission or cost if the property was to be sold or refinanced. After subtracting this amount—as well as amount paid by Jacquelyn as a down payment and for improvements made before the marriage—the district court ultimately determined that Jacquelyn's increase in equity was $12,468. Consequently, it awarded Jacquelyn "the real estate at that amount" subject to the mortgage and other indebtedness related to the house.

The district court also addressed the parties' retirement accounts and pension plan in the journal entry. It found Jacquelyn's testimony regarding "how she rolled her previous Mazuma 401(k) into her current Keel Point account" to be credible. Likewise,

the district court found that there was insufficient evidence presented from which it could value Justen's defined benefit plan. Thus, it set aside Jacquelyn's retirement accounts to her and Justen's pension to him.

In the journal entry, the district court also explained why it included a $28,000 insurance settlement received by Justen as part of its recapitulation. Specifically, the district court found that it was undisputed that "during the marriage, [Justen] received a $28,000 settlement from State Farm after a motorcycle wreck." A review of the record reveals that the accident occurred in December 2022 and that Justen's motorcycle "was deemed total loss."

After hearing the parties' testimony, the district court determined that Justen "used the money to purchase or attempt to purchase one or two other motorcycles." Although it was unclear who "actually owns the motorcycles," the district court found "it is . . . undisputed that [Jacquelyn] insured and stored these motorcycles, regardless of how they are titled." As a result, the district court concluded that "the settlement amount from State Farm is allocated to [Justen] in the amount of $28,000" because "he received that money and used it, or part of it, to purchase other motorcycles with the idea of turning a profit." Additionally, the district court granted the parties' agreement to award the motorcycles to Justen.

After summarizing its conclusions in the recapitulation section of the journal entry, the district court found "that the division . . . is equitable under the circumstances." Although Jacquelyn received more of the assets than Justen received, the district court found "that no equalization payment is necessary in this case, and that the division of the estate need not be equal to the penny." The district court then offered five reasons for reaching this conclusion. Among other things, the district court accounted for the fact that it found no "equalization payment is warranted" because Jacquelyn had waived any right

4

she had to part of Justen's pension and noted "the short term of the marriage and the nature and extent of the marital estate."

Thereafter, Justen filed a timely notice of appeal.

ANALYSIS

On appeal, Justen contends that the district court abused its discretion in dividing the marital property of the parties. Specifically, he argues that the district court erred in three ways. First, he argues that the district court abused its discretion in the way it divided the equity in the house. Second, he argues that the district court abused its discretion in the way it divided the parties' retirement accounts. Third, he argues that the district court abused its discretion by including the insurance settlement in the division of marital property. In response, Jacquelyn contends that the district court carefully considered the evidence, clarified its basis for its decisions, and divided the marital property in a just and reasonable manner.

A district court's division of property in a divorce action is governed by K.S.A. 2023 Supp. 23-2801 et seq. A district court has broad discretion when adjusting the property rights of the parties involved in a divorce action. As a result, we review a district court's division of property and debt for abuse of discretion. But we do not to disturb a district court's exercise of discretion absent a clear showing of abuse. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); see *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). Furthermore, we are not to reweigh the evidence or replace our judgment for that of the district court. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 935, 381 P.3d 490 (2016).

Judicial action constitutes an abuse of discretion only if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact.

*Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). A district court abuses its discretion "if no reasonable person would agree with the court's decision." *Thrailkill*, 57 Kan. App. 2d at 261. The party asserting the district court abused its discretion—in this case Justen—bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Under K.S.A. 2023 Supp. 23-2801(a), marital property is all of the property owned by married persons at the time of marriage including all of the property acquired by either spouse while married. When determining the division of marital property, a district court must consider the following factors under K.S.A. 2023 Supp. 23-2802(c):

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Although a district court must divide marital property in a just and reasonable manner, the division need not be equal. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). Before property division can occur, the district court must first identify the marital property. K.S.A. 2023 Supp. 23-2801; *In re Marriage of Meek*, 64 Kan. App. 2d 270, 279, 551 P.3d 127 (2024). Justen does not contend that the district court failed to identify the marital property. Rather, he argues that it failed to appropriately divide the parties' property.

Based on our review of the record on appeal, we find that the district court carefully listened to the parties' testimony, reviewed the exhibits admitted into evidence, and considered the arguments of counsel. In its journal entry, the district court described in detail its reasons for the way in which it divided the parties' property. It also

rationalized why it found that no equalization payment was justified under the circumstances presented.

Justen further suggests that no reasonable person would agree with the way the district court divided the marital property. Even so, we find that the district court's division is based on substantial competent evidence. The district court reached a reasonable determination based on evidence presented by the parties. Moreover, based on our review of the record, we find that the district court appropriately applied the law. Although another district court may have divided the property differently, it is not our role to replace our judgment for that of the district court.

As stated above, Jacquelyn testified at trial that she spent around $22,000 in a down payment on her home and $28,000 in home remodeling costs before the marriage. The district court adopted Justen's valuation of the house finding that it had appreciated $62,468 over the short span of the marriage. Then the district court appropriately found that Jacquelyn's expended funds—used to purchase and make improvements on the house before the marriage—should be taken into consideration for the purpose of determining the equity of the parties' home.

The district court also considered the cost of sale or refinancing as part of its calculation. In addition, it considered the "sweat equity" that Justen put into improving the house during the marriage. In deciding not to consider this in calculating the equity in the house, the district court found that "improvements to the property are a routine part of being married." The district court also found that "the evidence is insufficient for the court to quantify any such amounts." We do not find the process or reasoning that the district court applied in determining the equity in the house to constitute an abuse of discretion.

Next, Justen argues that the district court should have made an equal division of the parties' retirement accounts. Again, we note that a district court is only required to make an equitable division of property. *In re Marriage of Traster*, 301 Kan. 88, 111, 339 P.3d 778 (2014). Based on our review of the record, we find that the district court's decision regarding the parties' retirement accounts and pension plan was reasonable in light of the evidence presented and was within its sound discretion.

It is undisputed that each party had their own retirement accounts or pension plan before the marriage. Although Jacquelyn attempted to value her retirement accounts at trial, Justen did not attempt to value his pension plan. Instead, he requested that the district court apply the Johnson Couty Family Law Guidelines, which suggest an equal division by using a Qualified Domestic Relations Order (QDRO).

QDROs are certainly a useful tool for district courts, attorneys, and litigants to use. Even so, Kansas law does not require that the division of retirement accounts or pension plans be done in a particular manner, nor is a district court required to follow local guidelines. See K.S.A. 2023 Supp. 23-2802(a). Here, the district court diligently considered the evidence presented and justified its decision why each party should retain their own retirement accounts and pension plan. Hence, we do not find that the district court abused its discretion under the circumstances presented.

Lastly, Justen argues that the district court abused its discretion by considering the proceeds of the insurance settlement he received following a motorcycle accident in dividing the parties' property. As discussed above, there are several factors that a district court should take into consideration in dividing marital assets. K.S.A. 2023 Supp. 23-2802(c). As it explained in the journal entry, the evidence presented at trial on this issue was "convoluted," and required the district court to weigh the testimony of the parties as well as other relevant evidence related to the receipt of the insurance proceeds and the events that subsequently transpired.

Upon weighing the evidence, the district court found that Justen used the money he received from State Farm to buy or attempt to purchase one or two motorcycles "with the idea of turning a profit." Moreover, the district court noted that it was undisputed that Jacquelyn "insured and stored these motorcycles, regardless of how they were titled." So, the district court decided to award the motorcycles to Justen without including them in the recapitulation. It instead allocated the $28,000 settlement proceeds to him. In explaining its rationale for dividing the property in the manner in which it did in the journal entry, the district court also found that Jacquelyn "paid to insure and store the motorcycles, for which [Justen] received a further benefit." Thus, we conclude that substantial competent evidence supports the district court's inclusion of the motorcycle settlement proceeds in the division of the marital property.

CONCLUSION

Based on our review of the record on appeal, we find that there is substantial competent evidence supporting the district court's decision regarding the division of marital property in this short-term marriage. We also find that the district court made no mistake of law or fact. Even though other courts may have divided the parties' property differently, we do not find the district court's decision to be unreasonable. Therefore, we conclude that the district court did not abuse its discretion, and we affirm the district court's decision.

Affirmed.

9